UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL MCSWEENEY,<br><br>                Petitioner,<br><br>v.<br><br>WARDEN OF THE OTAY MESA DETENTION FACILITY, et al.,<br><br>                Respondents. | Case No.: 3:25-cv-02488-RBM-DEB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Docs. 1, 12]** |

       On September 15, 2025, Petitioner Emmanuel McSweeney ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging the lawfulness of his detention by United States Immigration and Customs Enforcement ("ICE"). (Doc. 1.) After the Court granted Petitioner's Motion for Appointment of Counsel (*see* Docs. 8, 10), Petitioner filed the following: a Motion in Support of Temporary Restraining Order ("TRO Motion") (Doc. 12); a Supplemental Brief in Support of Temporary Restraining Order ("Supplemental Brief") (Doc. 18); and an Amendment and Supplement to Habeas Petition ("Amended Petition"). (Doc. 19.) Respondents filed: a Return to the Petition ("Response") (Doc. 9); a Response in Opposition to the TRO Motion ("TRO Opposition") (Doc. 15); and a Supplemental Brief addressing "issues raised by the Amended Petition" ("Supplemental Response"). (Doc. 21 at 1.) Having considered these filings and the arguments of counsel at the hearing on October 3, 2025 (Doc. 16), and for the reasons set forth below, the Court **GRANTS** the Petition.

## I.  BACKGROUND

### A.  Factual Background

Petitioner was born in The Bahamas in 1996 and was admitted into the United States with his mother on a B2 visa with instructions to depart on or before February 14, 1999. (Doc. 12 at 2; Doc. 9 at 2.[1]) Petitioner overstayed his departure date without authorization and, beginning on March 31, 2010, submitted several applications for Temporary Protected Status ("TPS") to United States Citizenship and Immigration Services ("USCIS"). (Doc. 9-2 at 5.) USCIS granted Petitioner TPS on five occasions over the next few years. (*See id.*) On April 11, 2018, USCIS denied Petitioner's application for TPS. (*Id.*) On February 25, 2020, ICE "encountered Petitioner in Broward County Jail . . . after his February 20, 2020 arrest for cocaine possession and February 25, 2020 arrest for burglary." (Doc. 9 at 2–3.) On May 21, 2020, Petitioner was "ordered removed from the United States to Bahamas or in the alternative to Haiti." (*Id.* at 3 (citing Doc. 9-2 at 8); Doc. 12 at 2.) The removal order became final on April 20, 2021, when the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal of the removal order. (Doc. 9-2 at 13.)

On December 10, 2020, Petitioner was released from ICE custody on an order of supervision. (Doc. 9 at 3 (citing Doc. 9-1, Declaration of Jason Cole ["Cole Decl."] ¶ 4).) On March 18, 2025, Petitioner went to an immigration check-in in Florida. (Doc. 12 at 2.) At that check-in, ICE re-detained Petitioner to "effectuate his removal from the United States." (Cole Decl. ¶ 5.) According to the Form I-213 completed that same day, Petitioner was asked if he feared "persecution, torture, or physical harm if returned to his *native country of Venezuela*." (Doc. 9-2 at 19) (emphasis added). The Notice of Revocation of Release provided to Petitioner that day also stated:

> This letter is to inform you that your order of supervision has been revoked, and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a

---

[1] The Court cites the CM/ECF electronic pagination for all citations unless otherwise noted.

review of your official alien file and a determination that there are changed circumstances in your case. . . . *The Government of Cuba* has issued a travel document for your removal. . . . You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation. You may submit any evidence or information you wish to be reviewed in support of your release.

(Doc. 18-1 at 2) (emphasis added).

On September 11, 2025, after reviewing his custody status, ICE determined that Petitioner should remain in custody. (Doc. 9 at 4 (citing Doc. 9-2 at 18–19, 22–24).) "ICE based its decision, in part, on Petitioner's numerous criminal convictions . . . and concluded that Petitioner poses both a risk to public safety and a significant flight risk." (Doc. 9 at 4 (citing Doc. 9-2 at 19, 22–24).) On September 19, 2025, Petitioner was provided an interview by ICE Enforcement and Removal Operations ("ERO"). (Doc. 9 at 4 (citing Doc. 9-2 at 31–33; Cole Decl. ¶ 10).) On September 23, 2025, the Embassy Consular Annex of the Commonwealth of The Bahamas ("Bahamian Consulate") provided ERO an email confirming that Petitioner is not a citizen of The Bahamas. (Cole Decl. ¶ 10.) The email reads: "Good afternoon Officer Cole, The Bahamas Embassy Consular Annex wishes to advise that it has been determined that Mr. Emmanuel Ishmael McSweeney is not a citizen of the Commonwealth of The Bahamas. Therefore, he should not be repatriated to The Bahamas." (Doc. 21-1 at 3.) On September 30, 2025, ERO obtained a travel document for Petitioner's removal to Haiti. (*Id.* ¶ 11.) Respondents represent that with the issuance of that travel document, and with ICE currently "attempting to secure a flight itinerary for Petitioner," Petitioner can be "expected to be removed to Haiti within a week." (Doc. 9 at 2, 8.)

**B.      Procedural Background**

Petitioner, initially proceeding *pro se*, filed his Petition (Doc. 1) and Motion for Appointment of Counsel ("Motion to Appoint Counsel") (Doc. 2) in the Eastern District of California on September 15, 2025. (*See* Doc. 3.) The case was transferred to this Court on September 19, 2025. (Doc. 4.) On September 24, 2025, the Court set a briefing

schedule on the Petition and denied without prejudice Petitioner's Motion to Appoint Counsel. (Doc. 6.) Two days later, Petitioner filed a renewed Motion for Appointment of Counsel (Doc. 8), which the Court granted. (Doc. 10.) On October 1, 2025, Petitioner, now represented by Federal Defenders of San Diego, Inc., filed the TRO Motion. (Doc. 12.)

Respondents filed their Response on September 30, 2025 (Doc. 9) and their TRO Opposition on October 3, 2025. (Doc. 15.) The Court held a hearing on the TRO motion on October 3, 2025. (Doc. 16.) At the hearing, "the Court observed that counsel for both Parties appeared to speculate as to the contents of underlying documents that they have not submitted, and were unable to answer several of the questions posed." (Doc. 17 at 1.) Accordingly, the Court ordered the Parties to submit supplemental briefs. (*Id.* at 1–2.) Petitioner filed his Supplemental Brief (Doc. 18) and Amended Petition (Doc. 19) on October 10, 2025. The Amended Petition was filed against Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Jesus Rocha, and Christopher LaRose (collectively, "Respondents"). Respondents filed their Supplemental Response on October 15, 2025. (Doc. 21.)

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

Petitioner argues that the Petition should be granted because: (1) "procedural due

process prevents his removal during the adjudication of his motion to reconsider and reopen" his immigration court case; (2) ICE must first seek removal of Petitioner to The Bahamas under 8 U.S.C. § 1231(b)(2) and *Jama v. Immigr. & Customs Enforcement*, 543 U.S. 335 (2005); and (3) ICE violated the regulations set forth in 8 C.F.R. § 241.4(l) and § 241.13(i). (Doc. 12 at 8–15; Doc. 19 at 3–9.) Petitioner also argues that ICE may not remove him to a third country without providing him with adequate notice and an opportunity to be heard. (Doc. 19 at 9–10.)

Respondents argue that: (1) Petitioner is jurisdictionally barred from bringing his claims under 8 U.S.C. § 1252(g) and *Rauda v. Jennings*, 55 F. 4th 772 (9th. Cir. 2022); (2) The Bahamas refused to accept Petitioner for repatriation; and (3) ICE complied with its regulations or, in the alternative, its failure to comply did not substantially prejudice Petitioner. (Doc. 9 at 4–5; Doc. 21 at 2–9.)

The Court finds that it has jurisdiction over all but one of Petitioner's claims because the Petition challenges the manner in which ICE executed the removal order rather than the removal order itself. The Court also finds that the Petition should be granted because ICE violated Petitioner's due process rights by failing to comply with 8 C.F.R. § 241.4(l) and § 241.13(i).

**A.  Jurisdiction**

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional arguments. *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). For the reasons set forth below, the Court finds that it has jurisdiction over each of Petitioner's claims except his claim that "procedural due process prevents his removal during the adjudication of his motion to reconsider and reopen" his immigration court case. (Doc. 12 at 8.)

Respondents argue first that district courts do not have jurisdiction "to stay removal for the adjudication of pending motions to reopen removal proceedings." (Doc. 21 at 2–4 (citing *Rauda*, 55 F. 4th at 777)).) Petitioner argues that he "not only seeks a stay of

removal—he seeks 'a remedy for unlawful executive detention.'" (Doc. 18 at 9) (quoting *Rauda*, 55 F. 4th at 779). Respondents argue second that the Court lacks jurisdiction to hear the Petition under 8 U.S.C. § 1252(g). (Doc. 9 at 4–5.) This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g). The Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

In *Rauda*, the petitioner was denied relief under the Convention Against Torture ("CAT") and ordered removed. *Rauda*, 55 F.4th at 776. The petitioner unsuccessfully appealed to the BIA and the Ninth Circuit. *Id.* Several months later, the petitioner moved the BIA to reopen his case so that it could consider new developments relevant to his request for CAT relief. *Id.* After the Ninth Circuit's stay of removal terminated, the petitioner filed a habeas petition with the district court, "asking the court to enjoin the government from removing him until the BIA ruled on his motion to reopen and the court ruled on his habeas petition." *Id.* The district court denied his motion, holding that the petitioner was challenging the execution of his removal order, which falls within § 1252(g)'s limitation of jurisdiction upon federal courts. *Id.* In affirming the district court's decision, the Ninth Circuit found that what the petitioner "fundamentally [sought] was] a stay of removal pending the BIA's resolution of his motion to reopen. Because [the petitioner] asks [the Ninth Circuit] to review an interim order and not a final order of removal that may give rise to a petition for review, [the Ninth Circuit] lack[s] jurisdiction to consider his claim." *Id.* (cleaned up).

The Court similarly finds that § 1252(g) and *Rauda* preclude jurisdiction only as to Petitioner's claim seeking a stay of removal so that his motion to reconsider and reopen his immigration court case may be adjudicated. *Accord Louangmilith v. Noem*, Case No.: 25-cv-2502-JES-MSB, 2025 WL 288178, at *3 (S.D. Cal. Oct. 9, 2025) ("*Rauda* seems to

stand for the proposition that a due process violation cannot *solely* rest on the argument that removal must be prevented so that a motion to reopen can play out in immigration court.").

Petitioner's other claims, though, are not barred. Petitioner does not challenge the legitimacy of his May 2020 order of removal. Rather, he challenges the legality of his detention, which does not require judicial review of the Attorney General's decisions to commence proceedings, adjudicate cases, or execute removal orders. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025) (noting courts have "distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not.").

Respondents argue that Petitioner's claims "necessarily arise" from the Attorney General's decision to commence removal proceedings against him. (Doc. 9 at 5.) This interpretation of 8 U.S.C. § 1252(g) would "eliminate judicial review of immigration [detainees'] claims of unlawful detention . . . inconsistent with *Jennings v. Rodriguez* and the history of judicial review of the detention of noncitizens under 28 U.S.C. § 2241." *Sanchez v. LaRose*, Case No.: 25-cv-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)); *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022)). Accordingly, as other courts in this District have found in similar cases, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241. *See Sanchez*, 2025 WL 2770629, at *2; *Palma v. LaRose*, Case No. 3:25-cv-1942-BJC-MMP (S.D. Cal. Aug. 11, 2025), ECF No. 14; *Rokhfirooz v. LaRose*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal. Sept. 15, 2025).

**B.    Removal to The Bahamas**

On May 21, 2020, Petitioner was "ordered removed from the United States to Bahamas or in the alternative to Haiti." (Doc. 9 at 3 (citing Doc. 9-2 at 8).) Petitioner argues that ICE may not remove Petitioner to the alternatively designated country of Haiti without first attempting to remove him to the primary designated country of The Bahamas.

(Doc. 19 at 6.) Petitioner claims that ICE's decision to seek travel documents from Haiti before first seeking them from The Bahamas violates the "consecutive removal commands" within 8 U.S.C. § 1231(b). (*Id.* (citing *Jama*, 543 U.S. at 341).)

Under 8 U.S.C. § 1231(b)(2)(C)(iii), the Attorney General "may disregard a designation under subparagraph (A)(i) if . . . the government of the country is not willing to accept the alien into the country." Respondents include in their Supplemental Response an email exchange between Deportation Officer Cole and the Bahamian Consulate. (Doc. 21-1.) According to the exchange, Officer Cole emailed the Bahamian Consulate on August 28, 2025, asking if "it is possible for the Bahamian consulate to provide an official letter indicating that [Petitioner] does not derive Bahamian citizenship." (*Id.* at 6.) On September 23, 2025, the Bahamian Consulate responded that "it has been determined that [Petitioner] is not a citizen of the Commonwealth of The Bahamas. Therefore, he should not be repatriated to The Bahamas." (*Id.* at 3.) Because ICE did seek to remove Petitioner to The Bahamas, and the Bahamian government is not willing to accept Petitioner, the Court finds that ICE did not violate § 1231(b).

C. **Due Process**

Petitioner challenges his detention as unlawful based on ICE's decision to revoke his release without providing the required notice or opportunity to be heard. (Doc. 18 at 5–7; Doc. 19 at 3–6.) Petitioner's claims therefore implicate the Due Process Clause. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. *Zadvydas*, 533 U.S. at 693–94. The fundamental requirements of due process are that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231. Under that statute, "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within

a period of 90 days," also known as the "removal period." 8 U.S.C § 1231(a)(1)(A). "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Those regulations, which govern release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. § 241.4 and § 241.13. The Parties discuss both regulations in their filings, and even after supplemental briefing, it is unclear which regulation controls. Under either regulation, however, ICE failed to comply with the required procedures, thereby violating Petitioner's due process rights.

### 1. Agency Regulations

In relevant part, release may be revoked under 8 C.F.R. § 241.4 when the Executive Associate Commissioner or a district director believes revocation "is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]." 8 C.F.R. § 241.4(l)(2)(iii). Section 241.13 provides "special review procedures" that apply where a noncitizen "has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." § 241.13(a). Release may be revoked under this section if, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2). Under both regulations, "[u]pon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release or parole" and will be given "an initial informal interview promptly after his or her return to Service custody" to "respond to the reasons for revocation stated in the notification." § 241.4(l)(1); § 241.13(i)(3).

Petitioner argues his detention is procedurally deficient because he was not provided a sufficient notice of the reasons for revocation of his release nor a prompt interview to respond to those reasons. (Doc. 18 at 6; Doc. 19 at 4–5.) Specifically, the "only record provided by ICE . . . informed [Petitioner] that the reason for his detention was that Cuba had already issued travel documents for his removal," and "[n]o one from ICE has ever

invited [Petitioner] to contest his detention." (Doc. 19 at 4–5.)

Respondents argue that ICE complied with its regulations when it detained Petitioner. ICE provided a written notice to Petitioner on March 18, 2025 "set[ting] forth the reasons for Petitioner's re-detention as follows:

> ICE has determined that you can be expeditiously removed from the United States pursuant to an outstanding order of removal against you. On April 20, 2021, the Board of Immigration Appeals dismissed your case appeal, and you are subject to an administrative final order of removal.

(Doc. 21 at 7.)

Respondents concede that the written notice provided to Petitioner incorrectly stated that the government of Cuba had issued travel documents for Petitioner, arguing instead that Petitioner should have understood the document to contain a typo. (Doc. 21 at 8.) Petitioner notes that the Form I-213 completed on March 18, 2025 indicates Petitioner "stated that he is not afraid of persecution, torture, or physical harm if returned to his native country of Venezuela." (Doc. 12 at 2) (citing Doc. 9-2 at 19.) Petitioner also represents that after being re-detained on March 18, 2025, he was "placed in a detention center in Florida where he did not speak to an immigration officer and remained in the same clothes he was arrested in for five days. Weeks later, he was placed on a plane and not told where he was going," before being "brought to the detention center in San Diego." (Doc. 12 at 2.)

Under the circumstances, the Court concludes Petitioner was not provided adequate notice of the reasons for revocation of his release. Between the order of removal, the notice of revocation of release, and the conversation reflected on the Form I-213, Petitioner was told that he may be removed to at least three different countries. ICE's conclusory and unclear explanation for revoking Petitioner's release "did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention informal interview." *Diaz v. Wofford*, Case No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending

hearing.") (citation omitted)).

Nor was Petitioner given the opportunity to respond "at a meaningful time." *Mathews*, 424 U.S. at 333. Petitioner was taken into ICE custody on March 18, 2025. (Doc. 12 at 2.) Despite the requirement in both 8 C.F.R. § 241.4(l) and § 241.13(i) that Petitioner be afforded "an initial informal interview promptly after his or her return to Service custody," he was not interviewed until September 19, 2025. (Doc. 9 at 4 (citing Doc. 9-2 at 31–33; Cole Decl. ¶ 10).) That six-month delay violated § 241.4(l) and § 241.13(i)'s requirement that the interview occur "promptly" after Petitioner's re-detention. *See M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (finding an informal interview given 27 days after petitioner was taken into ICE custody "cannot reasonably be construed as . . . prompt" and granting habeas petition); *Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025) (finding "the failure to provide an informal interview during that lengthy [two-month] period of time renders petitioner's re-detention unlawful").

Respondents argue that ICE provided Petitioner a prompt opportunity to respond in that the notice of revocation of release advised Petitioner: "[y]ou may submit any evidence or information you wish to be reviewed in support of your release." (Doc. 18-1 at 2.) And Petitioner did provide ICE "with information related to ICE's detention decision" on February 25, 2025.[2] (Doc. 21 at 9.) But the purpose of the informal interview is to give a noncitizen "an opportunity to respond to the reasons for revocation stated in the notification." § 241.4(l)(1); § 241.13(i)(3). The information Petitioner provided on February 25, 2025 necessarily came before he was provided with notice of the reasons for revocation of his release on March 18, 2025. Petitioner could not have meaningfully

---

[2] It is unclear what information Petitioner provided. As Respondents note, "[t]he Court has ordered Respondents to provide any additional documentation confirming that the information was provided on that date. Respondents have been unable to locate any." (Doc. 21 at 9.)

responded to the proffered reasons for revocation when he had not yet even been informed of those reasons.

### 2. Prejudice

Respondents next argue that "[e]ven assuming the agency's compliance with the regulations fell short, Petitioner has not established substantial prejudice." (Doc. 21 at 8 (citing *Carnation Co. v. Sec'y of Lab.*, 641 F.2d 801, 804 n.4 (9th Cir. 1981) ("Although there is little discussion of when the *Accardi* supervisory powers should be invoked, courts have indicated that the standard is whether violation of the regulation prejudiced the party involved.").)

Where there is a regulatory violation, the Court should assess "whether violation of the regulation prejudiced the party involved." *Carnation Co.*, 641 F.2d at 804 n.4. In the immigration context, "violation of a regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the [noncitizen]." *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979).

The Court finds that ICE failed to comply with the requirements of § 241.4 and § 241.13, and that those failures "prejudiced interests of [Petitioner] which were protected by the regulation[s]." *Id.* Both § 241.4 and § 241.13 were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). ICE deprived Petitioner of these due process protections when it failed to provide him with sufficient notice or a prompt interview to respond to the reasons for revocation of his release. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Hernandez v. Sessions*, 872 F.3d 976, 995, 1000 (9th Cir. 2017) (holding that "[u]nlawful detention" by immigration officials constituted "irreparable harm"). Therefore, Petitioner was prejudiced by ICE's failure to comply with its own regulations.

Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations.") (cleaned up). The Court's research indicates that every district court, except two[3], to consider the issue has "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz*, 2025 WL 2646165, at *4; *see, e.g.*, *Rombot v. Souza*, 296 F. Supp. 3d 383, 387–88 (D. Mass. 2017) (ordering the petitioner released where, "[b]ased on ICE's violations of its own regulations, the Court concludes [the petitioner's] detention was unlawful"); *K.E.O. v. Woosley*, Civil Action No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations"); *Grigorian v. Bondi*, CASE NO. 25-cv-22914-RAR, 2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide [the petitioner] with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels [the petitioner's] release.").

This Court reaches the same conclusion. ICE's failure to comply with both 8 C.F.R. § 241.4 and § 241.13 violated Petitioner's due process rights. *See Diaz*, 2025 WL 2581575, at *7 ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *M.S.L.*, 2025 WL 2430267, at *11 ("ICE's failure to provide Petitioner with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking her into custody is a grave violation of Petitioner's due process rights in that they

---

[3] *See Louangmilith*, 2025 WL 2881578, at *3–4; *Medina v. Noem*, Case No. 25-cv-1768-ABA, 2025 WL 2306274, at *12 (D. Md. Aug. 11, 2025) (denying habeas petition without prejudice because the petitioner, unlike in this case, had "not pointed to authority showing that the remedy for a violation of [§ 241.4] (if such a violation has occurred) is release from detention.").

deprived her both of meaningful notice and an opportunity to be heard.").

Accordingly, the Petition is **GRANTED**. In light of the disposition herein, the Court declines to address the remaining grounds in the Petition for seeking release.

### IV. CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision.
2. Petitioner's TRO Motion (Doc. 12) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

DATE: October 24, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE